> *Order of redetermination will be entered on 20 days' notice, under Rule 50.*

---

## M. F. TARPEY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 2948.        Decided September 25, 1926.

Actual losses proved by competent evidence are the only basis for deduction for obsolescence of tangible property.

*Paul S. Marrin, Esq.*, for the petitioner.
*George E. Adams, Esq.*, for the respondent.

The Commissioner asserts deficiencies in income and profits taxes for the years 1918 and 1919, in the respective amounts of $19,091.82 and $28,317.62, or a total of $47,409.44. The controversy arises from the disallowance of certain deductions from the income of the petitioner for the taxable years on account of obsolescence of wine vineyards and losses of profits sustained as a result of national prohibition legislation.

### FINDINGS OF FACT.

The petitioner is a citizen of the United States, and a resident of the State of California at Tarpey's Vineyard, where he is engaged in the production of wine, raisin and table grapes. At January 1, 1918, he was the owner and operator of vineyards comprising 1,150 acres of which 840 acres were planted to wine grapes and the remainder to raisin and table grapes. In 1918, he abandoned and destroyed the vines on 200 acres of wine-grape vineyards, leaving 640 acres planted to wine grapes.

In his income and profits-tax returns for 1918 and 1919, the petitioner made the following deductions from his gross income for the respective years on account of losses alleged to have been sustained as a result of national prohibition legislation: 1918, obsolescence $56,539.90, loss of profits $61,727.32, or a total of $118,267.22; 1919, obsolescence $61,879.89, loss of profits $67,338.90, or a total of $129,018.79. Upon audit the Commissioner disallowed such deductions and determined the deficiencies here involved.

It is stipulated that the prices per ton received for wine grapes sold by the petitioner were as follows: 1918, $75.36; 1919, $99.92; 1920, $126.48; 1921, $113.84; 1922, $81.52; 1923, $76.72; 1924, $72.56.

### OPINION.

LANSDON: The petitioner asks for the deduction of $118,267.22 and $129,018.79 from his gross income for the years 1918 and 1919 on account of obsolescence of 640 acres of wine-grape vineyards and loss of profits from operation of the same during the respective years, and relies on the provisions of section 214 (a) (8) of the Revenue Act of 1918, which is as follows:

A reasonable allowance for exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolescence.

There is no dispute of the reasonable allowance for the exhaustion, wear and tear of the petitioner's vineyards. The parties agree on the basic value per acre at March 1, 1913, on the useful life of vineyards of the type owned by the petitioner, on the rate of depreciation, and on the total amount of deductible depreciation. Such de-

preciation has been computed, deducted, and allowed. The only question for our consideration is whether the petitioner is entitled to further deductions from his gross income for the taxable years on account of obsolescence and loss of profits, resulting from national prohibition, in the amounts set forth in our findings of fact.

It is obvious that this petitioner seeks to apply the provisions of the law to his advantage on a purely hypothetical basis. If Federal prohibition legislation had totally destroyed the market for wine grapes, the petitioner might then have been entitled to a reasonable allowance for the obsolescence of his wine-grape vineyards; but even in such an event, not proved in this proceeding, we know of no law that would authorize the deduction of estimated profits from gross income in the determination of Federal tax liability. The record completely refutes the theory and the argument of the petitioner. The market for wine grapes was not destroyed in 1918. Instead of losses during the taxable year, it is proved by the stipulation that the taxpayer obtained higher prices for his crops, and it is a fair presumption that such increase in receipts resulted in increased profits.

*Judgment for the Commissioner.*